## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| TEAMONE CONTRACT SERVICES, LLC d/b/a TEAMONE LOGISTICS, LLC, | ) ) ) ) | **Civil Action No. 1:19-cv-03891-TWT** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY, | ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

## FIRST AMENDED COMPLAINT

COMES NOW, TeamOne Contract Services, LLC d/b/a TeamOne Logistics, LLC ("TeamOne" or "Plaintiff"), in the above styled action, and files this First Amended Complaint against the above-named Defendant American Guarantee & Liability Insurance Company ("AGLIC" or "Defendant") and respectfully files this Frist Amended Complaint and states as follows:

### PARTIES, JURISDICTION AND VENUE

1.

TeamOne is a corporation incorporated under the laws of Georgia with its principal place of business in Fulton County, Georgia.

2.

AGLIC is a licensed insurance company organized under the laws of the state of Illinois with its principal place of business in Illinois. AGLIC is authorized to do

business in the state of Georgia.  AGLIC is duly registered as a foreign insurance company in Georgia.  AGLIC can be served via its registered agent, Corporation Service Company, 40 Technology Parkway, South, Suite 300, Norcross, Gwinnett County, Georgia, 30046.  Because AGLIC was misidentified as Zurich in the original Complaint [Doc. 1], the parties have entered into the Consent to Amend Complaint and Stipulation of Time to File Answer or Otherwise Respond, filed contemporaneously herewith.

3.

Plaintiff is subject to personal jurisdiction and venue of this Court.

4.

Defendant is subject to personal jurisdiction and venue of this Court.

5.

Defendant is a citizen of a different state than Plaintiff.

6.

The amount in controversy, exclusive of interest and costs, exceeds $75,000.

7.

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because diversity exists between the Parties.

## FACTUAL SITUATION

### 8.

TeamOne is a workforce solutions expert focused on the transportation and logistics industry which provides drivers to United Parcel Service, Inc. ("UPS") pursuant to a contract between UPS and TeamOne.

### South Carolina Accident

### 9.

On May 2, 2018, two (2) sequential, interrelated collisions occurred in Duncan, South Carolina involving two (2) tractor-trailers and a pickup truck, resulting in two (2) fatalities and a below-the-knee amputation to a third person.

### 10.

As a result of these collisions, three (3) cases have been filed in the State Court of DeKalb County, State of Georgia:

a)  *Stuart Hamilton and Felicia Hamilton v. United Parcel Service, Inc.*, et al.; Civil Action No. 18A70517;

b)  *Martha Whitlock, individually, and as Executrix of the Estate of Jeff Virgil Whitlock, Jr. v. United Parcel Service, Inc., et. al*; Civil Action No. 18A71870; and

c)  *Aaron Whitlock and Kathy Black, individually, and as Executors of the Estate of Jarett Whitlock v. United Parcel Service, Inc.*, et al.;

Civil Action No. 18A71875, (hereinafter collectively "Underlying Litigation").

11.

All three (3) of these cases in the Underlying Litigation are still pending in State Court.

**Policies**

12.

TeamOne purchased various insurance policies from AGLIC and Zurich which allegedly provided coverage during the time frame of the May 2, 2018 accident, which are as follows:

a) Coverage provided by AGLIC:

    i. Automobile Liability Policy, No. PRA 4677320-05, Policy Period: May 3, 2017 to May 3, 2018 ("Auto"); and

    ii. Commercial Umbrella Policies, No. UMB 9467332-05, Policy Period: May 3, 2017 to May 3, 2018 *and* No. UMB 9467322-06, Period May 3, 2018 to May 3, 2019 ("Umbrella").

b) Coverage provided by Zurich:

    i. Staffing Professional Policy; No. PRA 9699004-06, Policy Period May 3, 2018 to May 3, 2019 ("SPP"); and

ii. Commercial General Liability Policy, No. PRA 9699004-05,

Policy Period: May 3, 2017 to May 3, 2018 ("CGL").

13.

Through, counsel, AGLIC initially agreed to defend TeamOne under a reservation of rights under the Automobile Liability Policy, specifically the Non-Owned Business Automobile Liability provision. *See* Reservation of Rights Letter dated October 16, 2018, attached hereto as Exhibit "A".

14.

In the same letter Zurich American Insurance Company ("Zurich") denied coverage under the Commercial General Liability Policy pursuant to the Auto Liability Exclusion.

15.

Zurich also denied the direct claims of the underlying plaintiffs under the Staffing Professional Liability Policy pursuant to the Bodily Injury Exclusion.

16.

Zurich did however realize that UPS would potentially have claims against TeamOne based upon the underlying plaintiffs' claims for negligent training, supervision, and retention in the Underlying Litigation.

17.

As a result, Zurich agreed to provide a defense under reservation of rights in the event that UPS actually made claims and/or initiated litigation against TeamOne.

18.

Unfortunately, Zurich and AGLIC denied all of UPS's claims under these policies even though UPS was an additional insured under the entire insurance program. *See* Denial Letter to UPS, dated April 18, 2019, attached hereto as Exhibit "B".

19.

Because of the catastrophic nature of these collisions at issue in the Underlying Litigation, it is not unreasonable to assume that the total amount of all jury verdicts could exceed the total policy limits under the Policies.

20.

Unfortunately, AGLIC decided to reverse course under the Business Auto Liability Policy and decided to refuse to defend TeamOne under a reservation of rights. Instead, AGLIC denied the claim because it argued that TeamOne's provision of transportation and training services to UPS did not satisfy the definition of the non-owned auto coverage under the business auto policy. *See* Denial Letter to TeamOne, dated April 18, 2019, attached hereto as Exhibit "C".

### TeamOne's Bad Faith Claims

21.

This action only involves TeamOne's claims for breach of contract and bad faith based on Defendant's denial under the Business Auto policy. However, TeamOne reserves its rights to file suit on the other policies if it decides to do so.

22.

TeamOne sent a bad-faith demand letter to Defendant on or about July 12, 2019 via certified mail. *See* Bad Faith Letter, attached hereto as Exhibit "D". The United States Postal Service ("USPS") records indicate that the certified letter was delivered on July 15, 2019. However, Defendant says it did not receive the letter until July 19, 2019.

23.

Pursuant to Georgia law, the bad faith claims arise on the 61st day, thus TeamOne intends to amend its Complaint and add the bad faith count after the sixty (60) days have elapsed, on September 14, 2019.

### COUNT I-
### BREACH OF CONTRACT: DUTY TO DEFEND

24.

Paragraphs 1 through 23 are incorporated as if fully restated herein.

25.

Defendant had a duty under its Policy to provide a defense to TeamOne.

26.

Defendant has breached its duty to defend and/or indemnify TeamOne by denying coverage under the Business Auto Liability Policy.

27.

Defendant's breach has caused, and will continue to cause, TeamOne harm as TeamOne will now have to provide for its own defense and/or indemnity or face contribution claims from UPS for the cost of providing a defense of the Underlying Litigation.

28.

TeamOne's damages continue to accrue and will need to be determined at trial by the jury.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a)  Enter judgment in its favor and against AGLIC on all claims asserted herein;

(b)  Award TeamOne all damages incurred as a result of AGLIC's actions, including the bad faith penalty;

(c)  Award TeamOne costs and attorneys' fees for prosecuting this action pursuant to O.C.G.A. § 33-4-6;

(d)  Award TeamOne pre-judgment interest on all damages incurred;

(e)  Panel a jury to try all the issues in this case; and

(f)    Grant TeamOne such other and further relief as is necessary.


Respectfully submitted this 16th day of October, 2019.


LINDSEY & LACY, PC

_/s/  W. Thomas Lacy, Jr._
W. Thomas Lacy, Jr.
Georgia Bar No. 431032

2002 Commerce Drive N, Suite 300
Peachtree City, Georgia 30269
Phone: (770) 486-8445
Fax: (770) 486-8889
tlacy@llptc.com
_Attorney for Plaintiff_

EXHIBIT "A"



October 16, 2018

*Via Certified Mail Return Receipt Requested and Email*
*(jhudson@teamonelogistics.com)*

Jeff Hudson
Team One Contract Services, LLC
960 North Point Parkway
Suite 300
Alpharetta, GA 30005

**Zurich North America**
**Professional Programs Claims**

P.O. Box 968041
Schaumburg, IL
60196-8041

Telephone (973) 394-5813
Fax (866) 255-2962
http://www.zurichna.com

RE:   **American Guarantee and Liability Insurance Company**
      **Business Auto Policy No. PRA 4677320 05**
      **Zurich American Insurance Company**
      **Commercial General Liability Policy No. PRA 9699004-05**
      **Professional Liability Policy No. PRA 9699004-06**
      **Claim #:**     4410092908
      **Insured:**     Team One Contract Services, LLC
      **Claimant:**    Jeff Whitlock et al.

Dear Mr. Hudson:

On behalf of American Guarantee and Liability Insurance Company
("American Guarantee") and Zurich American Insurance Company
("Zurich American"), this letter acknowledges receipt of the claims made
by Jeff Whitlock, Jarrett Whitlock and Stewart Hamilton ("Claimants") for
injuries sustained on May 2, 2018 (the "Claim").

We are directing this letter to you as the authorized representative for
Team One Contract Services, LLC (the "Insured") for insurance coverage
purposes. To the extent that you are not acting on behalf of the Insured
with respect to insurance matters, we request that you direct a copy of this
letter to the appropriate representative of the Insured for his or her
information and advise us accordingly.

We have reviewed the provisions of the Policies in light of the allegations
set forth in the Claims. This letter summarizes American Guarantee and
Zurich American's current coverage analysis. This analysis is subject to
modification as additional facts are discovered and developments occur.

October 16, 2018
Page 2

## I.    THE POLICIES

A file has been established under Business Auto Policy No. PRA 4677320-05 (the "Policy"), which was issued to the Insured by American Guarantee for the policy period May 3, 2017 to May 3, 2018 (the "Policy Period").    We have also reviewed coverage under Commercial General Liability Policy No. PRA 9699004-05 issued to the Insured by Zurich American and under Staffing Industry Professional Liability Policy No. PRA 9699004-06 issued to the Insured by Zurich American.

## II.    THE CLAIM

On May 2, 2018, the Insured's employee Brian Reynolds was operating a vehicle leased by the Insured's client, UPS ("Client"), from Penske, when he was involved in a motor vehicle incident with Claimants.   Stewart Hamilton and Felicia Hamilton have filed suit against United Parcel Service, Inc., Team One Logistics, LLC, Team One Contract Services, LLC, Brian Reynolds and Liberty Mutual Fire Insurance Company.   The complaint alleges negligence on the part of Brian Reynolds and negligent hiring, supervision and training on the part of United Parcel Service, Inc., Team One Logistics, LLC and Team One Contract Services, LLC.   It does not appear Team One Logistics, LLC is a named insured under the policy. However, it appears the complaint was amended to change the Insured's name to Team One Contract Services, LLC dba Team One Logistics.

## III.    COVERAGE ISSUES

American Guarantee and Zurich American recognize that the allegations in the Claim are unsubstantiated at this time.   Consequently, nothing contained in this letter is intended to suggest any legal or factual merit to the allegations.   Nevertheless, American Guarantee and Zurich American believe it is prudent to identify for you at this stage various matters which, depending upon further factual discovery and developments, may give rise to coverage defenses.

1.    **Commercial General Liability Policy**

October 16, 2018
Page 3

We will first analyze this claim under the Insured's Commercial General Liability Policy No. PRA 9699004-05 issued to the Insured by Zurich American.

First, with regard to the Commercial General Liability portion of the Policy, we direct your attention to Section I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY of the Policy, which provides in relevant part:

1.      Insuring Agreement

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies...

\*\*\*

We direct your attention to Section 2. Exclusions as amended by the Staffing Industry Amendatory Endorsement:

\*\*\*

This insurance does not apply to:

g. Aircraft, Auto or Watercraft

    "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto', or watercraft owned or operated by or rented or loaned to any insured.

\*\*\*

This matter stems from a motor vehicle accident involving bodily injury. Given the above cited exclusion, there is no coverage for this matter under the Staffing Industry Commercial General Liability Policy.  As such, Zurich American will not be providing a defense or indemnity for the loss under the Insured's Commercial General Liability Policy.

2.      Staffing Industry Professional Liability Policy

October 16, 2018
Page 4

This claim was originally submitted under the Insured's Staffing Industry Professional Liability Policy No. PRA 9699004-06 issued to the Insured by Zurich American.

We direct your attention to SECTION I – INSURING AGREEMENTS:

A.      Coverage

1.      We will pay those sums that the insured becomes legally obligated to pay as "damages" because of any "claim" arising from a "wrongful act" to which this insurance applies …

We refer you to SECTION VII – DEFINITIONS, which provides in relevant part:

V.      "Wrongful act" means any actual or alleged act, error or omission, misstatement, or misleading statement in the course of providing "staffing services" to your clients by you or by any person for whose acts you are legally responsible.

We refer you to SECTION III – EXCLUSIONS, which provides in relevant part:

This insurance shall not apply to any "claim", based upon or arising out of, in whole or in part:

        C.      Any actual or alleged "bodily injury" or "property damage."

You have taken the position that there is coverage for the negligent hiring claim under this Professional Liability Policy. However, this matter stems from a motor vehicle accident involving bodily injury and death. Any and all claims asserted arise out of the bodily injury claim. But for the bodily injury, there is no other claim. Given the above cited exclusion, there is no coverage for this matter under the Staffing Industry Professional Liability Policy. As such, Zurich American will not be providing defense or indemnity for the loss under the Staffing Industry Professional Liability Policy.

Additionally, we also refer you to SECTION III – EXCLUSIONS, which provides in relevant part:

October 16, 2018
Page 5

This insurance shall not apply to any "claim", based upon or arising out of, in whole or in part:

I.      Any liability assumed by an insured under any contract or agreement, unless such liability would have attached to the insured by law in the absence of such contract or agreement.

As the policy also contains the above exclusion for contractual indemnification, there is no coverage for this matter under the Staffing Industry Professional Liability Policy. As such, Zurich American will not be providing defense or indemnity for the loss under the Staffing Industry Professional Liability Policy.

3.      **Business Auto Policy**

The Insured's Business Auto Policy No. PRA 4677320-05, issued by American Guarantee, provides coverage for Symbols 8 and 9 autos.

First, the Policy provides, in relevant part:

## SECTION II – LIABILITY COVERAGE

### A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

The Policy also provides, in relevant part:

## SECTION IV – BUSINESS AUTO CONDITIONS

### B. General Conditions

***

### 5. Other Insurance

October 16, 2018
Page 6

    a.    For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

The vehicle being driven by the Insured's employee at the time of the accident was not owned by the Insured. In accordance with Section 5 above, this Policy is excess over any other collectible insurance. Accordingly, American Guarantee reserves its rights in connection with SECTION IV B.5(a) of the Policy.

<u>Second</u>, we refer to you to SECTION II – COVERED AUTOS LIABILITY COVERAGE:

1. Who Is An Insured

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or anyone else from whom you hire or borrow a covered "auto".

          This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

      (2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

      (3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

      (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their

October 16, 2018
Page 7

"employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

Based on the definition of an "Insured" set for above, Brian Reynolds does not qualify as an insured under this Policy. As such, there is no coverage for him under this policy and we will not be providing a defense or indemnity for him.

### Team One Contract Services, LLC and Brian Reynolds Are Insureds Under the UPS Auto Policy

The agreement requires UPS to provide auto insurance coverage for Team One Contract Services, LLC and its drivers/employees. As set forth above, the only potential coverage for Team One Contract Services, LLC is under its Business Auto Policy. However, that coverage is excess of UPS' auto coverage which provides coverage to Team One Contract Services, LLC and Brian Reynolds as additional named insureds. Zurich will respond separately to UPS in response to the October 12, 2018 letter requesting contribution from "TeamOne's insurer."

### Tender for Contractual Indemnification

UPS (or its affiliated entity) has tendered this matter to Team One by letter dated October 4, 2018 seeking contractual indemnification. The indemnity agreement is between UPS (or its affiliate) and Team One.

We believe that Team One should respond directly to this contractual indemnification tender in consultation with its legal counsel because it is Team One's promise (not Zurich's) for which UPS is seeking defense and indemnity.

Accordingly, as set forth above, the Company has no duty to defend Team One or Brian Reynolds under the GL or the PL Policy but Team One and Brian Reynolds are being provided a defense as additional insureds under

October 16, 2018
Page 8

the UPS Auto Policy. We recognize that in the event the UPS Auto Policy becomes exhausted, we recognize excess coverage for Team One under the HNOA.

## IV.    RESERVATION OF RIGHTS

American Guarantee and Zurich American expressly reserve all rights and defenses available under the Policies and at law. American Guarantee and Zurich American's position as to coverage for this matter is based on presently known facts. American Guarantee and Zurich American also reserve the right to supplement its coverage position based upon any facts not presently in its possession.

If you have any questions regarding American Guarantee and Zurich American's position, or anything else you would like us to consider in connection with our review, please contact me.

American Guarantee and Liability Insurance Company
Zurich American Insurance Company

Jeffrey Pasek
Professional Liability Claims Specialist
(973) 394-5813

cc:    Margarita Hambrock, CPCU, ARe
       World Wide Specialty Programs Inc.
       mhambrock@wwspi.com

EXHIBIT "B"



Clyde & Co US LLP
271 17th Street NW, Suite 1720
Atlanta, GA 30363
Telephone: 404 410 3150
Facsimile: 404 410 3151
www.clydeco.us
scott.bertschi@clydeco.us

April 18, 2019

**Via Email**

Douglas P. Skelley
Shidlofsky Law Firm
Greystone Plaza
7200 North Mopac Expressway, Suite 430
Austin, TX 78731
doug@shidlofskylaw.com

Re:     Zurich Insured:        Team One Contract Services, LLC
        Claimants:             Stewart Hamilton, et al.
        Zurich Claim No.:      4410092908

Dear Doug:

Thank you for forwarding your January 28, 2019 letter and for discussing your client's position with me the other day. As you know, this firm represents Zurich American Insurance Company with respect to the various claims addressed in your letter. Accordingly, please accept this letter in response to yours.

Your letter contends that UPS is entitled to coverage under the policy Zurich issued to Team One, under either the commercial general liability part or the business auto part. As explained in detail below, Zurich is forced to disagree with your analysis and conclude that the Zurich policy does not provide UPS coverage for this matter.

**Contractual Context**

While Zurich's position is based on the plain language of the policy, we would like to emphasize that its position precisely aligns with the Team One-UPS contract. That contract clearly states that UPS (not Team One) will insure the vehicles used by Team One employees such as Reynolds and that such insurance will cover both

Doug Skelley
April 18, 2019
Page 2

Team One and the driver. Moreover, UPS expressly promises to seek recovery from its own insurer for any bodily injury caused by the driver, with the sole exception of bodily injury resulting from Team One's breach of the agreement. Whether Team One breached the agreement is a dispute between Team One and UPS. That dispute will not be resolved by any of the underlying actions and, instead, is the subject of a tolling agreement between Team One and UPS.

In contrast to Zurich's position, your arguments run counter to the Team One-UPS agreement. You argue that Team One's insurer should cover the driver's negligence, contending that UPS did not really buy "insurance" for that risk. If that is true, then UPS has breached the contract. You further argue that, in this particular case, UPS's insurance would not apply because the underlying complaints allege negligent hiring and supervision. But such allegations are ubiquitous in auto claims. If this boilerplate were sufficient to shift the risk under the contract, UPS's obligation to insure Team One and the driver would be, for all practical purposes, illusory. The agreement, however, does not shift liability based on mere allegations, but provides an exception only for an actual breach of the agreement.

Regardless, the plain language of the Zurich policy makes it clear that UPS is not entitled to coverage for the underlying claims.

**General Liability Coverage**

Assuming for the sake of argument that UPS is an additional insured under the general liability portion of the policy, Zurich must nonetheless conclude that the claim is excluded. You do not dispute that the auto exclusion would apply to any vicarious liability for Reynold's actions, but contend that an endorsement's deletion of certain clarifying language in the auto exclusion implies an intent to cover negligent supervision claims.

*First,* your argument incorrectly assumes that the exclusion, as amended, is ambiguous. But Georgia courts have frequently held that the auto exclusion clearly applies to claims of negligent supervision of a driver, even without the clarifying language. *See, e.g., Video Warehouse, Inc. v. S. Trust Ins. Co.,* 297 Ga. App. 788, 791 (2009); *Strickland v. Auto-Owners Ins. Co.,* 273 Ga. App. 662, 664 (2005); *Grain Dealers Mut. Ins. Co. v. Pat's Rentals, Inc.,* 228 Ga. App. 854, 855-56 (1997) (vacated in part on other grounds). Absent any ambiguity, Georgia courts will enforce the provision as written and will not look to any intent. *See Appling v. State Farm & Cas. Co.,* 348 Ga. App. 369, 372 (2019).

Doug Skelley
April 18, 2019
Page 3

*Second*, the endorsement, when viewed as a whole, does not support your inference that the general liability coverage part was intended to apply to negligent hiring and retention claims. We acknowledge that Section A.1. of the Staffing Services Endorsement deletes from the auto exclusion the paragraph extending that exclusion to negligent supervision. But that same section goes on to add broader exclusions for negligent hiring and supervision claims. Specifically, Section A.3. of the Endorsement excludes "'bodily injury' or 'property damage' due to the rendering or failure to render any professional service." Given the name of the endorsement and the package policy as a whole, it is clear that "professional services" includes Team One's services in hiring and supervising employees. Further, the endorsement excludes any "'bodily injury' or 'property damage' arising from a wrongful act in rendering or failure to render services to or for your client"—such as UPS.

Taken in context with these additional exclusions, the intent of the Staffing Services Endorsement is not to expand coverage for negligent supervision claims involving an auto. Instead, the clear intent of the Endorsement is to broadly exclude all claims involving negligent supervision, regardless of whether such claims involve an auto. This makes sense when you look at the policy as a whole. The policy includes a separate Business Auto coverage part that applies to claims arising out of the use of a covered auto. Further, the policy includes a separate Professional Liability coverage part that applies to claims for Team One's negligence in providing its professional staffing services. Accordingly, it is counterintuitive and nonsensical to infer auto coverage under the general liability coverage part based on a minor change to a single exclusion.

*Third*, and relatedly, the "professional services" and "wrongful acts" exclusions, quoted above, would apply to the extent the auto exclusion did not. Team One's supervision of Reynolds was part of its professional service provided to its client, UPS.

**Business Auto Coverage**

You argue that Zurich owes UPS primary coverage under the Business Auto coverage part. Zurich must respectfully reject this for three independent reasons:

*First*, the Business Auto coverage part is not applicable to this accident. As you know, that coverage part applies only to claims "resulting from the ownership, maintenance or use of a covered 'auto.'" (Policy, Auto Part, II.A.) According to the declarations, the policy only covers Symbol 8 and Symbol 9 autos. A Symbol 8 auto is any auto "you lease, hire, rent or borrow." (Policy, Auto Part, I.A.) Importantly, the term "you"

Doug Skelley
April 18, 2019
Page 4

refers only to the Named Insured—Team One. As you acknowledge, UPS leased the truck, not Team One. Accordingly, the truck does not qualify as a Symbol 8 auto.

Similarly, the truck was not a Symbol 9 auto. Symbol 9 autos are those that "you do not own, lease, hire, rent or borrow that are used in connection with your business." We acknowledge that Team One did not "own, lease, hire, rent or borrow" the truck, but must conclude that the truck was not "used in connection with [Team One's] business." Instead, the truck was being operated under the authority of UPS's DOT number. Further, we understand that it was carrying packages on behalf of UPS. Thus, Reynolds was driving the truck in connection with UPS's business of delivering packages, not Team One's business as a staffing company.

Accordingly, the Business Auto coverage part simply does not apply to this loss.

*Second,* even if the Business Auto coverage applied, UPS is not an insured under that part. You acknowledge that the Business Auto coverage part defines three categories of insureds: (1) the named insured—*e.g.* Team One; (2) permissive users of an auto that "you"—*e.g.* Team One—own, hire or borrow; and (3) those vicariously liable for the conduct of another insured—referred to as the omnibus clause. You then conclude that UPS is an insured under the omnibus clause because UPS is vicariously liable for Reynolds.

Your argument, however, is based on the faulty premise that Reynolds is an insured under the policy issued to Team One as a permissive user. He is not. As noted above, a permissive user is insured only for purposes of auto that *Team One* "own[s], hire[s] or borrow[s]." You expressly acknowledge that UPS leased the vehicle—not Team One. Team One did not "own, hire or borrow" the truck. Accordingly, Reynolds is not an insured under the Zurich policy. Notably, this is completely consistent with the Team One-UPS Master Staffing Services Agreement, which requires UPS to insure the driver.

Accordingly, UPS is not an insured under the omnibus clause because Reynolds—the entity for which UPS is being held vicariously liable—is not an insured.

*Third,* the Zurich Business Auto coverage part would only provide excess coverage over the Liberty policy specifically issued for the truck, to the extent the Zurich policy provided any coverage at all.

Doug Skelley
April 18, 2019
Page 5

Initially, you argue that the Liberty policy is not "other insurance" because it is a fronting policy and, thus, "self-insurance." The Georgia courts, however, have flatly rejected the notion that a fronting policy is self-insurance. *Northland Ins. Co. v. Am. Home Assur. Co.*, 301 Ga. App. 726, 731 (2009). In that decision, the court refused to exempt a fronting policy from the operation of competing other insurance clauses. Moreover, your argument would likely lead to the conclusion that UPS has violated the motor carrier financial responsibility law, as it does not appear to otherwise comply with the requirements of self-insurance. *See* O.C.G.A. §40-1-112(b). And, even if it did, the Georgia courts have expressly found that self-insurance pursuant to that statute is "other insurance" for the purposes of other insurance provisions. *RLI Ins. Co. v. Duncan*, 345 Ga. App. 876, 879 (2018) ("O.C.G.A. §40-1-112 specifically permits self-insurance in lieu of a policy of indemnity insurance, putting both forms of insurance on equal footing, and the excess insurance cannot be collected until the self-insurance limit is exhausted.") And, perhaps most importantly, if the Liberty policy did not constitute "insurance," then UPS has breached its obligations under the Master Staffing Services Agreement to provide such insurance.

You also argue that the Zurich policy is not excess to the Liberty policy because the Zurich policy states that it is primary for "liability assumed under an 'insured contract.'" (Policy, Auto Part, II.B.5.c.) Presumably, you are referring to the Master Staffing Services Agreement, but that agreement is not an "insured contract." First, Team One does not "assume[s] the tort liability" of UPS. (Policy, Auto Part, V.H.5.) Specifically, the agreement only requires Team One to indemnify UPS for bodily injury caused by a driver when it was caused by Team One's breach of the agreement. This is not the assumption of UPS's tort liability.

More importantly, the definition of "insured contract" expressly excludes any contract "that holds a person or organization engaged in the business of transporting property by 'auto' for hire harmless for your use of a covered 'auto' over a route or territory that person or organization is authorized to serve by public authority." (Policy, Auto Part, V.H.c.) In other words, an insured contract does not include Team One's agreement to indemnify UPS when the driver is using UPS's DOT number, which is precisely the situation here.

You also argue that the Liberty policy's "escape clause" applies. Initially, while the Georgia courts have not expressly addressed the issue, the "modern trend" is to ignore such clauses as against public policy. *Attain Specialty Ins. Co. v. Sierra Pac. Mgm't Co.*, 725 Fed. Appx. 557 (9th Cir. 2018). Further, we note that the escape clause ap-

Doug Skelley
April 18, 2019
Page 6

plies only when "you"—meaning UPS in that context—has other insurance available. It would not apply to the extent only Team One was provided coverage under the Business Auto part. And, most importantly, UPS is simply not an insured under the Zurich policy and, thus, the escape clause is not triggered.

## Contractual Indemnity

Finally, you assert that Team One will ultimately be liable to UPS for contractual indemnity—so Zurich may as well contribute now. Zurich recognizes that UPS has asserted a claim against Team One, and Zurich has agreed to defend that claim subject to a reservation of rights. Your letter, however, fails to advance that claim or provide any evidence or legal arguments suggesting that Team One will have any liability to UPS. In particular, the contractual indemnity provision obligates Team One to indemnify UPS only if Team One has breached the Master Staffing Services Agreement. You have pointed to no provision that Team One breached. Instead, your argument that the Liberty policy really isn't insurance strongly suggests that it was UPS, not Team One, that breached the agreement.

Ultimately, however, you have put the proverbial cart before the horse. There is no lawsuit between UPS and Team One and, instead, the parties have executed a tolling agreement. Accordingly, I suggest that we comply with that agreement and put off further discussion of those issues until the underlying matters have been resolved.

## Conclusion

Consistent with the risk allocation set out in the Master Staffing Services Agreement, the Zurich policy does not provide coverage to UPS, under either the Commercial General Liability or Business Auto coverage part. Instead, it is UPS that is obligated to purchase and pursue insurance coverage for Team One and the driver. While we acknowledge that UPS has asserted a claim against Team One for a breach of that agreement, those claims are currently tolled.

Doug Skelley
April 18, 2019
Page 7


Please feel free to call me if you would like to discuss this matter further.

Sincerely,

Clyde & Co U.S. LLP

Scott F. Bertschi

cc:  Jeff Hudson (via email)
     Vanda Harris (via email)
     Jeffrey Pasek (via email)

# EXHIBIT "C"



CLYDE&CO

Clyde & Co US LLP
271 17th Street NW, Suite 1720
Atlanta, GA 30363
Telephone: 404 410 3150
Facsimile: 404 410 3151
www.clydeco.us
scott.bertschi@clydeco.us

April 18, 2019

**Via Email**

Jeff Hudson
Team One Contract Services, LLC
960 North Point Parkway, Suite 300
Alpharetta, GA 30005
jhudson@teamonelogistics.com

Vanda Harris
Partner, Claims Services Practice Leader
Ironwood
4401 Northside Parkway, Suite 800
Atlanta, GA 30327
vharris@ironwoodins.com

| | | |
|---|---|---|
| Re: | Insured: | Team One Contract Services, LLC |
| | Claimants: | Jeff Whitlock et al. |
| | Claim No.: | 4410092908 |

Dear Jeff and Vanda:

As you know, this firm represents Zurich American Insurance Company and American Guarantee and Liability Insurance Company (collectively, "Zurich") with respect to the claims arising out of the May 2, 2018 motor vehicle accident near Spartanburg, South Carolina. We write to update Zurich's coverage position with respect to the personal injury claims brought by Stewart Hamilton and the estates of Jeff and Jarrett Whitlock (the "Personal Injury Claims"). Based on Zurich's ongoing investigation and analysis of these claims, Zurich is forced to conclude that the policy does not apply to the Personal Injury Claims as explained further below. Zurich will con-

Clyde & Co US LLP is a Delaware limited liability partnership with offices in Atlanta, Chicago, Kansas City, Long Beach, Los Angeles, Miami, New Jersey, New York, Orange County, San Francisco, and Washington, D.C. Clyde & Co US LLP is affiliated with Clyde & Co LLP, a limited liability partnership registered in England and Wales.



Jeff Hudson
Vanda Harris
April 18, 2019
Page 2

tinue, however, to provide Team One a defense to UPS's claim against Team One, subject to a full and complete reservation of rights.

## The Policy

Zurich issued a staffing services package policy to Team One Contract Services, LLC for a policy period of May 3, 2017 to May 3, 3018, which was renewed for the policy period of May 3, 2018 to May 3, 2019. The policy provides coverage through numerous different coverage parts, including Commercial General Liability, Business Auto, and Professional Liability. The Business Auto coverage part provides coverage on an occurrence basis and includes a $1 million per accident limit of liability. The Commercial General Liability coverage part also provides coverage on an occurrence basis and includes a $1 million per occurrence limit of liability. The Professional Liability part is written on a claims-made-and-reported basis, with a $5 million per claim limit.

## Coverage Analysis

As explained in Zurich's prior coverage position letters, the Commercial General Liability coverage part does not apply to the Personal Injury claims because that part excludes all claims arising out of the use of an auto. We also explained that the Professional Liability coverage part did not apply because that part excludes all claims arising out of bodily injury. Zurich took the position that the Business Auto part was excess of the UPS policy covering the truck involved in the accident and reserved rights on a number of different issues, including the issue of whether the truck was a "covered auto."

We have now had a chance to further evaluate coverage under the Business Auto coverage part in light of the facts alleged and understood to date. Based on that review, Zurich is constrained to decline coverage because the truck involved in the accident is not a covered auto.

The Declarations page identifies the covered autos as Symbol 8 and Symbol 9 vehicles. A Symbol 8 vehicle is an auto "you lease, hire, rent or borrow." (Policy, Auto Part, I.A.) Based on the allegations of the various complaints filed on behalf of the Whitlocks and Mr. Hamilton and based on our understanding of the actual facts, Team One did not lease, hire, rent or borrow the truck. Instead, it was leased by

CLYDE&CO

Jeff Hudson
Vanda Harris
April 18, 2019
Page 3

UPS. As you know, the term "you" in the Business Auto part refers only to the Named Insured—*i.e.,* Team One—and not UPS. Accordingly, the truck is not a Symbol 8 auto.

A Symbol 9 auto includes any vehicles "you do not own lease, hire, rent or borrow that are used in connection with your business." (Policy, Auto Part, I.A.) We understand that Reynolds was operating the truck under UPS's US DOT number and, therefore, was necessarily operating the truck in connection with UPS's business. Moreover, we understand that the truck was pulling a trailer containing UPS packages that were being transported to further the business activities of UPS. Based on this, Zurich is forced to conclude that the truck was not being used in connection with Team One's business of providing staffing services, but UPS's business of delivering packages. Thus, the truck is not a Symbol 9 auto.

Accordingly, the Business Auto coverage part does not apply to the Personal Injury Claims. And, we incorporate by reference the coverage position letters of October 16, 2018 and January 10, 2019 as to the applicability of the Commercial General Liability and Professional Liability coverage parts.

**Conclusion**

Zurich is forced to conclude that the policy does not cover the Personal Injury Claims for the reasons set forth above. Please note that the issues raised in this letter are in addition to, and not in lieu of, the issues raised in any prior coverage position letter, including the October 16, 2018 letter, as well as our January 10, 2019 letter. Zurich expressly reserves the right to raise any of the issues identified in those letters.

As explained in our letter of January 10, 2019, however, Zurich will continue to defend Team One against the claim by UPS, subject to a full and complete reservation of rights, including the reservation set forth in that letter.

While we have attempted to be as complete as possible in the identification of the potential coverage issues, further factual and legal development may raise other issues. Accordingly, Zurich's identification of the particular issues here and in its prior letters is not intended to be a waiver of any other issues that may exist. Instead, Zur-

CLYDE&CO

Jeff Hudson
Vanda Harris
April 18, 2019
Page 4

ich's reservation of rights expressly includes the right to further supplement its position and raise issues not specifically discussed before.

If you believe that Zurich's coverage position is incomplete or incorrect, either factually or legally, please provide the information on which the belief is based. Zurich will review any additional information you wish to provide and revise its coverage position accordingly, if warranted.

Please feel free to contact me if you would like to discuss the contents of this letter or Zurich's coverage position in general.

Sincerely,

Clyde & Co US, LLP

Scott F. Bertschi

cc:     Jeffrey Pasek

EXHIBIT "D"



LINDSEY & LACY, PC

July 12, 2019

<u>VIA CERTIFIED U.S. MAIL</u> (Return Receipt Requested)
<u>& EMAIL</u>

Scott Bertschi
Clyde & Co US LLP
271 17th Street NW, Suite 1720
Atlanta, Georgia 30363
Scott.bertschi@clydeco.us

|  |  |
|---|---|
| RE: | |
| Insured: | Team One Contract Services, LLC |
| Claimant: | Jeff Whitlock, et al. |
| Carrier: | Zurich American Insurance Company |
| Policy Nos. | PRA 4677320-05 (05/03/2017 – 05/03/2018) |
| | UMB 9467332-05 (05/03/2017 – 05/03/2018) |
| Claim No: | 4410092908 |
| Date of Incident: | May 2, 2018 |

Dear Mr. Bertschi:

As you know, this firm has been retained by Team One Contract Services, LLC ("Team One") to represent it in the above referenced claim. For various reasons discussed more fully below, Team One disagrees with Zurich American Insurance Company's ("Zurich") coverage position and therefore, Team One is forced to make this bad faith demand.

**I. Zurich's Business Auto Policy Covers the Underlying Claims.**

Team One disagrees with Zurich's coverage analysis and denial of coverage under the Business Auto Policy. As you discussed in Zurich's denial letter sent to my client dated April 18, 2019, the issue under the Business Auto Policy really comes down to whether or not the Team One employee, Brian Reynolds, was using a UPS vehicle in connection with Team One's business or for UPS' business. That issue amounts to a distinction without a difference because there is no rational basis for distinguishing Team One and UPS' business as that undefined term is used in the Business Auto Policy. Clearly, Mr. Reynolds' driving a UPS truck is Team One's business because Team One is in the business of hiring, training, and placing drivers with UPS which is one of its largest accounts.

Zurich's very narrow interpretation of that undefined term seems to be designed to justify its denial of coverage and its refusal to participate in the defense of the underlying lawsuits. Even in the absence of an ambiguity, Georgia courts interpret insurance policies from the viewpoint of

the insured.  So this Policy will be interpreted from the viewpoint of a reasonable person not an insurance expert or an attorney.  However, in this case, given that the term "your business" is not a defined term, the most likely result of a judges' construction of the Policy will be that the term is deemed ambiguous because theoretically it could refer to Team One's business, UPS's business, or both companies' business.  In that event, Georgia courts will construe the Policy pursuant to Title 13.  The most important principle for our purposes is the application of the doctrine of *contra preferentem*.  In the current situation the Court would almost certainly apply that doctrine against Zurich as the drafter of the insurance policy and therefore construe "your business" as including Team One's business dealing with UPS.  That construction would lead to a finding that Zurich breached its duty to defend and duty to indemnify Team One for this accident.

## II. Zurich Needs To Make Its Coverage Position On The Professional Liability Policy Clear.

Zurich has agreed to defend Team One under a reservation of rights from any claims brought by UPS.  However, because those claims are currently on hold pursuant to the tolling agreement between UPS and Team One, Zurich has not made its coverage position clear with regard to the claims of negligent suspension, hiring, training, and retention of Mr. Reynolds, as asserted in the underlying lawsuits.

Team One hereby requests that Zurich does so pursuant to O.C.G.A. § 336-34(7) & (8). As you mentioned in your previous coverage correspondence, the Professional Liability Policy has $5 million in limits in the primary layer and another $5 million at the Umbrella Layer.  Please have your client provide its coverage analysis of its duty to defend and duty to indemnify obligations for the negligence based claims of the underlying lawsuits in advance of the scheduled July 25, 2019 mediation of the underlying case.

## III. Zurich Needs to Meaningfully Participate at the Mediation.

The underlying motor vehicle accident was tragic and catastrophic.  The underlying plaintiffs have very well-regarded personal injury lawyers as their counsel and the potential for large jury verdicts is real.  At this point I do not believe the plaintiffs' lawyers have made any statutory *Holt* demands but I am sure that it is just a matter of time.  In short, this is a case all parties involved would do well to settle now rather than run the risk of very large and very public verdicts with subsequent coverage lawsuits.

Based on our discussion, Clyde & Co. will be at the mediation on July 25, 2019 representing Zurich's interests.  While you have not shared the amount of authority that the attending attorney may have, hopefully, he will have authority to draw from multiple policies.  During our conversation I also requested the presence of the Zurich senior adjuster and/or in-house counsel so the mediation will be more productive.

In my conversations with Leslie Eason, she mentioned she was planning on being at the mediation acting as the carrier assigned defense counsel under the Professional Liability Policy.  To the extent that Clyde and Co. will be there representing the Business Auto Policy and Ms. Eason will be there as defense counsel, and with some authority from the Professional Liability Policy, Team One welcomes their contributions and participation.  However, we would like a clear understanding of the participants and their roles at the mediation from Zurich's point of view.

While this letter will serve as Team One's bad-faith demand under the Business Auto Policy, and that section of The Umbrella Policy, Team One reserves its right to make a bad-faith

demand under the Professional Liability Policy, and that section of the Umbrella Policy, once Zurich clarifies its coverage position regarding the underlying cases.

Zurich's position with regard to any claims UPS may make against Team One appears to be a passive sit and wait approach. Team One took the initiative, in conjunction with UPS, to put a tolling agreement in place to focus on the real opponents. However, Zurich benefits from this agreement because UPS's appointed counsel is incurring all the defense costs while Zurich monitors the case. Essentially Zurich is abdicating its defense obligations and responsibilities.

Zurich has also taken the position that it has no active defense obligation, or indeed any indemnity obligations, until UPS sues Team One which does not comport with Zurich's responsibilities under the Policy or under Georgia law. The touchstone of Georgia coverage law is the equal consideration rule and demanding that your insured's biggest and best client sue it before Zurich takes an active role in resolving litigation is not putting Team One's financial interests on equal footing with Zurich's financial interests. In fact, Zurich's position very simply puts Team One's survival as a company at risk in order to save a few dollars on defense costs. At this point if Zurich fails to participate in the mediation, meaningfully and in good faith, Team One will be making a bad-faith demand against that Policy as well.

Finally, Team One is disappointed in Zurich's position because Team One and the broker received written assurances from Zurich underwriters that these types of negligence based claims would be covered if asserted by an underlying plaintiff in a motor vehicle accident. Based on these representations by Zurich, Team One continued to buy this insurance program from Zurich. Reversing course in the face of potentially catastrophic liability is quintessential bad faith on Zurich's part.

## IV. Bad Faith Demand

As with most jurisdictions, Georgia provides that the breadth of coverage is governed by the terms of the Policy. Any ambiguities in the Policy can be settled by the courts as a matter of law but are interpreted against the carrier as the drafter of the Policy. Zurich has a duty of good faith and fair dealing towards its insured. Failure to pay a claim when a demand is made pursuant to O.C.G.A. §33-4-6 exposes a carrier to up to a 50% of the claim's value as a penalty as well as attorney's fees incurred by the insured.

O.C.G.A. §33-4-6 is Georgia's insurer bad faith statute. It reads in relevant part:

> In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000 whichever is greater, and all responsible attorney's fees for the prosecution of the action against the insurer.

Failure to provide Team One a defense and/or the funds necessary to resolve the claim within the Policy limits will expose Zurich to the statutory bad faith penalties. This letter

constitutes Team One's demand to assume Team One's defense and/or pay this claim in full within the next sixty (60) days, pursuant to O.C.G.A. §33-4-6[1].

## V. Spoliation

Zurich has a duty to preserve all material evidence relating to this Claim. Failure to do so may expose Zurich to sanctions for spoliation of evidence. O.C.G.A. §24-4-22; *Wal-Mart Stores, Inc. v. Lee*, 290 Ga.App. 541 (2008) and *Baxley v. Hakiel, Inc. et al.*, 282 Ga. 312 (2007). I hereby request that Zurich preserve all documents related to this Claim.

## VI. Conclusion

Please let me know if Zurich intends to honor its obligations under the Policy. If Zurich does not do so, my client has authorized me to file suit. Additionally, O.C.G.A. §33-4-6 also requires that I serve the Georgia Insurance Commissioner with a copy of the Complaint.

Best personal regards,

W. Thomas Lacy

CC:    Page Siplon/Team One (via email only)
       Jeff Hudson/Team One (via email only)

CC:    Jonathan Friedman
       Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC
       3344 Peachtree Road, NE
       Suite 2400
       Atlanta, GA  30326
       jfriedman@wwhgd.com

WTL/jkbl

---

[1] Team One also believes that UPS property and property under UPS' control was destroyed so while these amounts are unknown at this time, Team One reserves its right to make a bad faith claim under O.C.G.A. § 33-4-7 as well.

## CERTIFICATE OF SERVICE AND TYPE SIZE COMPLIANCE

This is to certify that I electronically filed the foregoing *FIRST AMENDED COMPLAINT* (which has been prepared in Times New Roman, 14 point font, pursuant to Local Rule 5.1(C), N.D. GA.) with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Scott F. Bertschi
Brandon R. Gossett
**CLYDE & CO US LLP**
271 17th Street NW, Suite 1720
Atlanta, Georgia 30363
scott.bertschi@clydeco.us
brandon.gossett@clydeco.us

Respectfully submitted, this 16th day of October, 2019.

LINDSEY & LACY, PC

  /s/  *W. Thomas Lacy, Jr.*
W. Thomas Lacy, Jr.
Georgia Bar No. 431032

2002 Commerce Drive N, Suite 300
Peachtree City, Georgia 30269
Phone: (770) 486-8445
Fax: (770) 486-8889
tlacy@llptc.com
*Attorney for Plaintiff*

10