IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TEAMONE CONTRACT SERVICES,
LLC doing business as
TeamOne Logistics, LLC,

     Plaintiff,

       v.

ZURICH AMERICAN INSURANCE
COMPANY, et al.,

     Defendants.

CIVIL ACTION FILE
NO. 1:19-CV-3891-TWT

**OPINION AND ORDER**

This is a breach of contract action. It is before the Court on the
Defendant American Guarantee & Liability Insurance Company's Motion for
Summary Judgment [Doc. 52]. For the reasons set forth below, the Defendant's
Motion for Summary Judgment [Doc. 52] is GRANTED in part and DENIED
in part.

## I.    Background

The Plaintiff TeamOne Contract Services, LLC is a "workforce
management company" that staffs drivers with various motor carriers,
including United Parcel Service, Inc. (Def.'s Statement of Undisputed Material
Facts ¶ 1.)[1] One of those drivers, Brian Reynolds, was operating a truck owned

---

[1] The operative facts on this motion for summary judgment are drawn
from the Defendant's statement of undisputed material facts and the Plaintiff's
statement of additional undisputed material facts. The Court will deem the
parties' factual assertions admitted unless the respondent makes a proper

or rented by UPS (and bearing UPS's USDOT number) when, on May 2, 2018, he allegedly collided with a car parked along the side of the road. (*Id.* ¶ 14.) The parked car's driver, Jeff Whitlock, and passenger, Jarrett Whitlock, were killed in the accident, and a third person, Stewart Hamilton, required a below-the-knee amputation. (*Id.* ¶ 20.) At the time of the accident, the UPS truck was being used to haul freight in UPS's interstate shipping operations; TeamOne did not direct the origin, destination, or any other aspect of that shipment. (*Id.* ¶¶ 16, 18.) The Whitlocks' estates and Hamilton filed suit against TeamOne and UPS after the accident: the two Whitlock actions are pending, and the Hamilton action has settled. (*Id.* ¶¶ 21-23.) UPS's insurer assumed TeamOne's defense in each of the underlying cases, and UPS paid to settle the Hamilton action with no contribution from TeamOne. (*Id.* ¶¶ 24-25.)

TeamOne provides staffing services to UPS under a "Master Services Agreement," which requires UPS to "provide and maintain on each vehicle operated by . . . Drivers supplied by [TeamOne], Automobile Public Liability and Property Damage insurance with coverage in an amount as required by the Motor Carrier Act of 1980." (*Id.* ¶¶ 2, 5 (citation omitted) (alterations in original).) The Master Services Agreement also requires UPS's insurance to name TeamOne and its staffed drivers as additional insureds "with respect to liability resulting from the ownership, custody, maintenance, use or operation

---

objection under Local Rule 56.1(B).

2

of the vehicles." (*Id.* ¶ 6 (citation omitted).) UPS must "'seek recovery from its insurance carrier' in the event of 'any bodily injury (including death) or property damage' that 'occurs due [to] the act or omission of' a TeamOne-placed driver." (*Id.* ¶ 7 (citation omitted).)

In addition to UPS's insurance, TeamOne carried its own business automobile insurance policy (the "Policy") at the time of the accident, issued by the Defendant American Guarantee & Liability Insurance Company. (*Id.* ¶ 27.) The Policy provides in relevant part:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

(*Id.* ¶ 29 (quoting Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, Ex. C at C-93 ("Policy")).) Only two categories of "autos" are covered under the Policy: "hired autos"—meaning "'autos' you lease, hire, rent or borrow"—and "non-owned autos"—meaning "'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business." (*Id.* ¶ 30 (quoting Policy at C-92).) The words "you" and "your" refer solely to TeamOne, but there is no definition given in the Policy for the word "business." (*Id.* ¶ 31; Pl.'s Statement of Additional Undisputed Material Facts ¶ 5.) The parties agree that the UPS truck used in the May 2, 2018 accident could only possibly be a non-owned auto and not a hired auto. (Def.'s Statement of Undisputed Material Facts ¶ 64.)

On the Policy application—which was reviewed, signed, and executed by

TeamOne's CEO Page Siplon—TeamOne was asked to list all drivers, including family members who drive company vehicles and employees who drive their own vehicles on company business. (*Id.* ¶¶ 40-41.) In response, TeamOne identified 14 drivers, all of whom were permanent corporate employees at the company. (*Id.* ¶ 42; *see also* Answer & Countercl., Ex. A at 5, 9 (the "Application").) None of the drivers named in the application were staffed by TeamOne with clients; at the time, though, TeamOne staffed more than 500 drivers with motor carrier clients, including roughly 400 with UPS alone. (Def.'s Statement of Undisputed Material Facts ¶¶ 43-44.) The application also asked whether TeamOne had a specific driver recruiting method, and TeamOne answered "no," even though driver recruiting is a service it provides to UPS and other clients. (*Id.* ¶¶ 47-48.) TeamOne answered "no" when asked whether it obtained Motor Vehicle Record ("MVR") verifications, even though obtaining MVRs is a service it provides to UPS and other clients. (*Id.* ¶¶ 49-50.) The application also asked whether TeamOne was party to any hold harmless agreements, and TeamOne again answered "no," even though the Master Services Agreement with UPS is a hold harmless agreement. (*Id.* ¶¶ 51-52.) Finally, TeamOne did not fill out the "Truckers Section" or the "Motor Carrier Section" on the application. (*Id.* ¶ 57.)

When TeamOne notified American Guarantee of the May 2, 2018 accident and sought coverage under the Policy, American Guarantee responded with an express reservation of all rights and defenses, noting that

4

UPS was obligated to (and did) provide primary coverage to TeamOne. (*Id.* ¶¶ 60-61.) Then, on April 18, 2019, American Guarantee sent a letter to TeamOne disclaiming any coverage based on the definition of covered autos. (*Id.* ¶ 62.) The letter explained that the UPS truck involved in the accident was not a "non-owned" (or Symbol 9) auto because Reynolds was operating it under UPS's USDOT number to transport UPS packages in furtherance of UPS's business activities. (First Am. Compl., Ex. C at 3.) For that reason, American Guarantee concluded that the truck "was not being used in connection with Team[]One's business of providing staffing services, but UPS's business of delivering packages."[2] (*Id.*) TeamOne later filed this action alleging that American Guarantee breached "its duty to defend and/or indemnify TeamOne by denying coverage under the [Policy]." American Guarantee responded with counterclaims to reform or, in the alternative, rescind the Policy against TeamOne. (Answer & Countercl. at 17, ¶¶ 32-46.)

## II.   Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw

---

[2] Recall that the Policy defines a non-owned auto as those autos TeamOne does not "own, lease, hire, rent or borrow that are used *in connection with* [TeamOne's] business." (Policy at C-92 (emphasis added).)

any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III.   Discussion

American Guarantee moves for summary judgment on two grounds. First, it argues that TeamOne's claim for breach of contract should fail "because the plain language of the [P]olicy only covers the use of autos in TeamOne's operation of its staffing business, not the enormous risks presented by UPS's interstate motor carrier operations." (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 2-3.) Second, American Guarantee argues that its counterclaim for rescission should succeed "because TeamOne's insurance application materially misrepresented the scope and nature of the business TeamOne intended to insure." (*Id.* at 3.) The Court addresses each argument in turn.

### A. Whether the Policy Covers the UPS Truck Used in the May 2, 2018 Accident

In Georgia, "insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." *Old Republic*

6

*Union Ins. Co. v. Floyd Beasley & Sons, Inc.*, 250 Ga. App. 673, 675 (2001) (quotation marks omitted). "[W]hen faced with a conflict over coverage, a trial court must first determine, as a matter of law, whether the relevant policy language is ambiguous." *Id.* at 675. "[W]here the terms of the contract are clear and unambiguous, the court looks only to the contract to find the parties' intent." *Gill v. B & R Int'l, Inc.*, 234 Ga. App. 528, 530 (1998). Even if a policy is susceptible to two reasonable meanings, it is not considered ambiguous so long as "the trial court can resolve the conflicting interpretations by applying the rules of contract construction." *Old Republic*, 250 Ga. App. at 675. This inquiry requires the court to "consider [the policy] as a whole, give effect to each provision, and interpret each provision to harmonize with each other." *Southern Trust Ins. Co. v. Dr. T's Nature Prods. Co.*, 261 Ga. App. 806, 807 (2003). Ultimately, "the risk of any lack of clarity or ambiguity in an insurance contract must be borne by the insurer." *Id.* (alteration omitted).

As explained above, the Policy insures TeamOne against liability for bodily injury resulting from the use of a hired auto or a non-owned auto. (Policy at C-78, C-93.) TeamOne's breach of contract claim raises only the question of whether the UPS truck involved in the May 2, 2018 accident was a non-owned auto—or put in contractual terms, whether the truck was an auto that "[TeamOne] do[es] not own, lease, hire, rent or borrow that [is] used in connection with [TeamOne's] business." (Policy at C-92.) Although the word "business" is not defined in the Policy, the parties appear to broadly agree that

7

TeamOne's business involves "placing staffed drivers with its motor carrier clients." (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 12; *see also* Pl.'s Statement of Additional Undisputed Material Facts ¶ 10 ("Providing trained drivers to drive UPS'[s], or any other customer's vehicles, is TeamOne's business.").) Also, TeamOne concedes that it "is not in the business of long-haul trucking or interstate package delivery." (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 8.)

The key language in the definition of non-owned auto, then, is "in connection with." The Georgia Court of Appeals has adopted a two-factor test to aid in interpreting this exact policy language. *See Nuvell Nat'l Auto Fin., LLC v. Monroe Guar. Ins. Co.*, 319 Ga. App. 400, 407 (2012).

> The first factor is the extent to which the vehicle at issue was used in the course and scope of the insured's business. The second factor in determining whether the use was "in connection with" the insured's business is the extent to which an insured held or exerted a right of control over the vehicle and its driver.

*Id.* (quoting *CMH Homes v. U.S. Fid. & Guar. Co.*, 2007 WL 595606, at *4 (E.D. Tenn. Feb. 21, 2007)). The insured party in *Nuvell National* was a repossession management company, Renaissance, that contracted to perform repossession services for Nuvell, a financing company. *Id.* at 400. When it received a request to repossess a truck for past-due payments, Renaissance contacted a repossession company called Renovo to pick up the truck, which in turn retained Michael Brown as an independent contractor to do the work. During the repossession, Brown ran over and killed a person with his tow truck. *Id.* at

8

401. In the ensuing wrongful death lawsuit, Renaissance sought, but was denied, coverage under its commercial automobile insurance policy, which included the same non-owned auto provision at issue in this case. *Id.* at 404. Agreeing with the insurance company, the trial court held that the tow truck was not a non-owned auto because it was not being used in connection with Renaissance's business. *Id.* at 405. Specifically, the court found that Renaissance was "a forwarder that acts as a middle man between finance companies and repossession companies," but that Renaissance's business "does not include *physically repossessing* vehicles." *Id.* at 407 (emphasis in original).

> The Georgia Court of Appeals reversed on appeal. It emphasized that
>
> > [c]arried to its logical extreme . . . the trial court's reasoning would also preclude finding that Renovo was in the repossession business because it subcontracted with Michael Brown as an independent contractor to go and *physically repossess* the vehicle, even though the tow truck was owned by Renovo and leased to Brown. These facts would indicate that Renovo was in the wrecker leasing business.

*Id.* at 407-08 (emphasis in original). The appellate court also cited deposition testimony from Nuvell's and Renaissance's corporate representatives about the scope of Renaissance's business. According to those depositions, Nuvell contracted with Renaissance to handle repossessions for eight different companies, and Renaissance's "value proposition" was that "we are the hub of information for the lender" related to repossessions. *Id.* at 408. "Both the tow truck driver and a customer, such as Nuvell, communicated with each other regarding repossession of vehicles through Renaissance." *Id.* Thus, viewed

9

with all inferences in Renaissance's favor, "the tow truck was being used 'in connection with the business' of Renaissance and . . . Renaissance was entitled to summary judgment on this issue." *Id.*

The same cannot be said for TeamOne and the UPS truck at issue in this litigation. At the time of the May 2, 2018 accident, the truck was being used to transport freight in UPS's interstate shipping operations, and it was operating under UPS's USDOT authority and number. The undisputed facts show that TeamOne had little to no authority over the truck or its driver while hauling UPS freight: TeamOne did not dictate from where or to where the shipment was being hauled; it did not designate the particular route to be taken to the destination; and it did not stand to receive payment upon completion of the shipment. (Pl.'s Statement of Undisputed Material Facts ¶¶ 16-19; Siplon Dep. at 33:16-34:3, 55:22-57:24.) So unlike Renaissance in *Nuvell National*, which coordinated the entire repossession process for Nuvell, TeamOne did not direct the time, place, or manner of moving freight on this truck for UPS; it was not the "hub of information" related to UPS's long-haul operations. *Nuvell Nat'l*, 319 Ga. App. at 408. Instead, it merely found the driver who operated the truck. TeamOne thus fails the second factor of the "in connection with" test: "the extent to which an insured held or exerted a right of control over the vehicle and its driver."[3] *Id.* at 407 (citation omitted).

_____

[3] In the Court's view, the first *Nuvell National* factor—"the extent to which the vehicle at issue was used in the course and scope of the insured's

Even if the Policy were ambiguous—and the Court does not believe it is—extrinsic evidence confirms American Guarantee's construction of the non-owned auto provision. *See Greenberg Farrow Architecture, Inc. v. JMLS 1422, LLC*, 339 Ga. App. 325, 329 (2016) ("Where ambiguities exist, the court may look outside the written terms of the contract and consider all the surrounding circumstances to determine the parties' intent." (quotation marks omitted)); O.C.G.A. § 13-2-2(1). On its insurance application, TeamOne identified just 14 people who drove vehicles on "company business." (Application, at 5, 9.) All of them were permanent corporate employees, whereas TeamOne had more than 500 drivers staffed with its motor carrier clients as of the application date. (Siplon Dep. at 104:4-106:6, 108:21-23.) TeamOne also answered on the application that it did not have a specific driver recruiting method and did not obtain MVR verifications (Application at 6), but it performs both of those services when selecting drivers for clients like UPS. (Siplon Dep. at 17:15-24:23, 115:3-117:14.) Similarly, TeamOne did not complete the "Truckers" section of the application and stated that it was not a party to any hold harmless agreements (Application at 3, 6), even though there

---

business"—is unhelpful in this case. 319 Ga. App. at 407 (quotation marks omitted). Although neither party briefed the *Nuvell National* test, American Guarantee would likely argue that the UPS truck was never used in the course and scope of TeamOne's business, since TeamOne's staffing business does not include hauling freight in interstate commerce. On the other hand, TeamOne would likely point to the hundreds of its drivers staffed with UPS to argue that, in fact, UPS trucks are frequently used as part of its business.

is an indemnification clause in the Master Services Agreement under which TeamOne supplies drivers to UPS. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, Ex. A at 6-7.)

Based on TeamOne's responses to the application, the Court concludes that the Policy was intended to cover only TeamOne's corporate employees, not the hundreds of drivers staffed with UPS and other clients.[4] TeamOne apparently did not consider those staffed drivers to be driving on "company business" at the time; otherwise, it would have named them in the "Driver Information" section of the application. (Application at 5,9.) This construction also best harmonizes with other provisions in the Policy: for example, the Policy gives a "rating basis" of 10 employees for the non-owned auto coverage, which does not square with the notion that, in fact, hundreds were covered. (Def.'s Statement of Undisputed Material Facts ¶ 32 (citing Policy at C-84); *See* O.C.G.A. § 13-2-2(4). TeamOne does not even attempt to explain the contradictions between its application and its current coverage position;[5]

---

[4] Indeed, TeamOne admits that its insurance application was "filled out by TeamOne to cover its office workers," but argues that it is still entitled to *excess* coverage for the remainder of its staffed drivers. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 21-22.) The Court struggles to understand how TeamOne could seek coverage at all, whether primary or excess, for a risk it did not disclose on its application.

[5] It seems, based on the record, that TeamOne's only possible explanation for these discrepancies is an innocent mistake. When asked about the matter during his deposition, Siplon, who executed the application on behalf of TeamOne, responded, "I missed those. They're simple little things that I should have caught. An error, my fault." (Siplon Dep. at 116:21-24.) The

instead, it argues that "the Court is duty-bound to interpret [ambiguous] language against" American Guarantee. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 12.) But again, even assuming some ambiguity in the meaning of non-owned auto, the extrinsic evidence unequivocally resolves that doubt in American Guarantee's favor. *See Thomas v. Am. Glob. Ins. Co.*, 229 Ga. App. 107, 108-09 (1997) (examining the entire insurance contract, the pertinent application forms, and deposition testimony to resolve the scope of a coverage exclusion).

TeamOne next argues that American Guarantee is estopped from claiming that the UPS truck was not being used in connection with TeamOne's business. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 13.) According to TeamOne, American Guarantee failed to "unambiguously reserve its right to deny based on its 'your business' argument," and impermissibly continued to investigate after denying coverage to arrive at its current position. (*Id.*) This argument is based on *Hoover v. Maxum Indemnity Co.*, 291 Ga. 402 (2012). There, the insurer denied coverage and refused to defend based on a policy exclusion while also reserving the right to claim several other defenses, including untimely notice. *Id.* at 403-04. But the Georgia Supreme Court held that "[a]n insurer cannot both deny a claim outright and attempt to reserve

---

Court disagrees that these now-disavowed responses are "simple little things," but rather, they bear directly on the intended and effective scope of the Policy's coverage.

the right to assert a different defense in the future." *Id.* at 405.

> A reservation of rights does not exist so that an insurer who has denied coverage may continue to investigate to come up with additional reasons on which the denial could be based if challenged. Rather, a reservation of rights exists to protect both the insurer and the insured by allowing an insurer who is uncertain of its obligations under the policy to undertake a defense while reserving its rights to ultimately deny coverage following its investigation or to file a declaratory judgment action to determine its obligations.

*Id.* at 406. Thus, the insurer failed to properly reserve its rights to assert a notice defense when it denied the claim and refused to defend on exclusion grounds. *Id.* at 405.

As American Guarantee observes on reply, TeamOne's reliance on *Hoover* is backwards. (Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 10.) Here, American Guarantee did not deny coverage for one reason and then later come up with its non-owned auto position under a reservation of rights. Instead, American Guarantee twice sent letters to TeamOne—on October 16, 2018, and January 10, 2019—reserving its rights and defenses under the Policy as to the Whitlock and Hamilton actions. (*See* First Am. Compl., Ex. A at 1, 8; Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. 2 at 2, 8.) Specifically, the second letter states, "we *assume* that the [UPS] truck was used in connection with Team[]One's business and[] would thus be a Symbol 9, non-owned, auto, *but must respectfully reserve our rights in the event the facts suggest otherwise.*" (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. 2 at 4.) It was not until April 18, 2019, that American Guarantee definitively denied

14

coverage to TeamOne for the personal injury claims, and it did so on the same grounds put forward in this lawsuit—that "the truck was not being used in connection with Team[]One's business of providing staffing services, but UPS's business of delivering packages." (First Am. Compl., Ex. C at 3.)

These letters were effective reservations under Georgia law. They (1) fairly informed TeamOne that American Guarantee disclaims liability and does not waive the defenses available to it, and (2) (though not required) informed TeamOne of the specific basis for American Guarantee's reservations. *See Wellons, Inc. v. Lexington Ins. Co.*, 566 F. App'x 813, 821 (11th Cir. 2014) (citing *World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.*, 287 Ga. 149, 152 (2010)). In any event, TeamOne's estoppel argument is foreclosed because American Guarantee never assumed TeamOne's defense in the Whitlock and Hamilton lawsuits—UPS's insurer did. *See Prescott's Altama Datsun, Inc. v. Monarch Ins. Co. of Ohio*, 253 Ga. 317, 318 (1984) ("[W]e find that risks not covered by the terms of an insurance policy, or risks excluded therefrom, while normally not subject to the doctrine of waiver and estoppel, may be subject to the doctrine where the insurer, without reserving its rights, assumes the defense of an action or continues such defense with knowledge, actual or constructive, of noncoverage." (citations omitted)); *Benton v. Zurich Am. Ins. Co.*, 2019 WL 12518370, at *2-3 (N.D. Ga. July 23, 2019) ("[A] coverage defense can be waived if the insurer unequivocally assumes its insured's defense.").

TeamOne's last estoppel argument references a May 18, 2015 email

from its insurance broker, Frank Eldridge, that describes a message received

from one of American Guarantee's third-party underwriters, Gail Colao. (Pl.'s

Br. in Opp'n to Def.'s Mot. for Summ. J., at 18.) Eldridge writes:

> Also, as discussed, your Automobile policy provides liability
> coverage for Hired, Non-owned and Scheduled Autos. It appears
> that the Automobile policy will respond to a claim on an excess
> basis over your customer's liability coverage. As we have
> discussed, the pricing does not reflect this, but the response
> indicates that Zurich [i.e., American Guarantee] would respond
> to such a claim.

> Following is the confirmation we received from the underwriter
> today:

> *If the injury (bodily) or damage (property) was due to negligent*
> *hiring the [Professional Liability] policy would respond. Also,*
> *since required by an insured contract liability coverage is primary*
> *for non-owned autos so they are covered. Physical damage to the*
> *clients [sic] vehicle would be excess however.*

> These clarifications provide Team[]One with broader coverage
> based on the underwriters [sic] response and intent.

(*Id.*, Ex. 4 at 1 (emphasis added); *see also id.*, Ex. 3, at 2 (May 15, 2015 email

from Colao to Eldridge).) According to TeamOne, Eldridge's years-old email

contradicts the coverage position taken by American Guarantee in this

litigation. (*Id.* at 18-19.) The Court disagrees: the email is at best ambiguous

and at worst irrelevant to the meaning of the Policy's non-owned auto

provision.

First, it is unclear from the record whether the "Automobile policy"

discussed in Eldridge's email is identical to the Policy at issue in this case. The

Court cannot assume so given that the Policy was issued nearly two years later

16

based on an application executed in March of 2017. (Policy at C-77; Application at 8.) Second, the attached exhibits lack important context to make sense of Eldridge's email—namely the specific question that prompted Colao's response in the first place. Without that context, the Court interprets Colao's short message to mean what it says: liability coverage for non-owned autos is primary for purposes of insured contracts and excess for physical damage to a client's vehicle. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., Ex. 3 at 2.) But this primary/excess distinction sheds no light on the threshold question before the Court: that is, whether a UPS truck used to haul freight by a TeamOne-placed driver is a non-owned auto under the Policy. Third, the hedging language from Eldridge (i.e., "[i]t appears" and "the pricing does not reflect this") seriously undermines any reasonable reliance by TeamOne on his Policy interpretation. (*Id.*, Ex. 4 at 1.)

Accordingly, the Court grants Defendant American Guarantee's motion for summary judgment on Count I of the Amended Complaint. Because the UPS truck was not being used in connection with TeamOne's business during the May 2, 2018 accident, it is not a non-owned auto under the Policy, and American Guarantee has no duty to defend or indemnify TeamOne in the underlying personal injury lawsuits. Neither estoppel nor waiver can save TeamOne's claim since American Guarantee properly reserved its rights and defenses after the accident and never undertook TeamOne's defense in those lawsuits.

17

**B.  Whether American Guarantee Can Rescind the Policy Based on Material Misrepresentations in TeamOne's Application**

Next, American Guarantee moves for summary judgment on its counterclaim for rescission because TeamOne "hid" any intent to insure its hundreds of staffed drivers. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 17.) American Guarantee pleaded this counterclaim only "to the extent the Court holds that the terms of the . . . Policy cover . . . . staffing services workers driving client vehicle[s] in interstate commerce." (Answer & Countercl. at 10-11, ¶ 2.) American Guarantee's counterclaim for reformation is subject to the same qualification. (*Id.* at 10, ¶ 1 ("Accordingly, to the extent the Court finds that the terms of the Business Auto Policy, in fact, cover such risks, American Guarantee is entitled to a reformation of the contract to conform to the parties' true intent.").) But the Court has not adopted that construction of the Policy; instead, the Court reads the non-owned auto provision to cover only TeamOne's corporate employees and not its staffed drivers. Thus, there were no material misrepresentations in TeamOne's insurance application, and American Guarantee has no need to avoid coverage under O.C.G.A. § 33-24-7(b). *See Pope v. Mercury Indem. Co. of Ga.*, 297 Ga. App. 535, 536-37 (2009). Accordingly, the counterclaims for reformation and rescission should be dismissed as moot.

## IV.   Conclusion

For the reasons set forth below, the Defendant's Motion for Summary Judgment [Doc. 52] is GRANTED in part and DENIED in part. The Clerk is DIRECTED to enter judgment in favor of the Defendant American Guarantee & Liability Insurance Company on Count I of the First Amended Complaint [Doc. 9]. The Defendant American Guarantee's counterclaims for reformation and rescission are DISMISSED as moot.

SO ORDERED, this ___18th___ day of May, 2022.


_____
THOMAS W. THRASH, JR.
United States District Judge